IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CAREY "SAMMY" MOORE and
JANICE JOHNSON,

      Plaintiffs,

v.                                                                                     No. 13-1243

HENDERSON COUNTY SHERIFF'S
DEPARTMENT, HENDERSON
COUNTY, TENNESSEE, SHERIFF
BRIAN DUKE, in his official capacity,
VICTOR STANFORD, individually,
HEATH DELANEY, individually,
CITY OF SCOTTS HILL, SCOTTS
HILL POLICE DEPARTMENT, and
WES WOODWARD, individually,

      Defendants.
_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;
GRANTING PLAINTIFFS' RULE 56(d) MOTION; AND
ORDER OF REFERENCE
_____

      Plaintiffs, Carey "Sammy" Moore and Janice Johnson, brought this action against the

City of Scotts Hill, the Scotts Hill Police Department, and Wes Woodward, in an amended

complaint filed December 31, 2013 alleging violations under 42 U.S.C. § 1983 and provisions of

Tennessee common law. (D.E. 9.) Before the Court is Defendants' motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiffs' responsive

motion to take discovery under Rule 56(d), to which Defendants have replied.

*I. BACKGROUND*

Plaintiffs filed the original complaint in this civil rights action against Henderson County, Tennessee, the Henderson County Sheriff's Department, Henderson County Sheriff, Brian Duke, and various other individuals on August 26, 2013. (D.E. 1.) Plaintiffs alleged that on August 27, 2012, they were awakened in their bedroom by Henderson County law enforcement officers, with weapons drawn, who had entered the home without permission or a warrant. Moore and Johnson claim the officers extensively searched the home before discovering they had come to the wrong location in search for a pontoon boat thief. (Id. at ¶¶ 7–23.) Plaintiffs explained that they named a number of possible individuals in the complaint after attempts to ascertain the officers' identities were frustrated by the unresponsive Sheriff's Department. (Id. at ¶¶19, 23.)

On December 18, 2013, Henderson County, the Henderson County Sheriff's Department, and Heath Delaney filed an answer to the complaint in which they stated as an affirmative defense that "they acted on presumably reliable information provided to them by Scotts Hills Police Department officer Wes Woodard [sic], and therefore [they] did not act intentionally, recklessly, or negligently." (D.E. 7 at ¶ 52.) They further stated that "the negligence of third parties was the sole proximate cause of the damages claimed by the Plaintiffs, to the extent Plaintiffs have compensable damages." (Id. at ¶ 53.)

On December 31, 2013, Moore and Johnson submitted an amended complaint adding the City of Scotts Hill, Tennessee, the Scotts Hill Police Department, and Wes Woodward as defendants (collectively the "Scotts Hill Defendants" or "Defendants").[1] (D.E. 9.) Waivers of service for these defendants were returned executed on January 20, 2014, (D.E. 14) and their answer was filed on February 6, 2014 (D.E. 15). On March 19, 2014, this Court entered an order

---

[1] The amended pleading identifies the three officers who entered Plaintiffs' home, upon information and belief, as Wes Woodward, an officer of the Scotts Hill Police Department, and Heath Delaney and Victor Stanford, both officers with the Henderson County Sheriff's Department. (D.E. 9 at ¶ 13.)

dismissing Heath Delaney, Brian Duke, Victor Stanford, Henderson County, and the Henderson County Sheriff's Department from this lawsuit, leaving only the Scotts Hill Defendants remaining. (D.E. 22.)

## II. STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Smith v. Perkins Bd. of Educ., 708 F.3d 821, 825 (6th Cir. 2013) (quoting Ford v. Gen. Motors Corp., 305 F.3d 545, 551 (6th Cir. 2002)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter[,]" but it is "to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 748 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 255, 106 S. Ct. 2505) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")

The moving party has the initial burden to "show that there is no dispute regarding any genuine issue of material fact." Slusher v. Carson, 540 F.3d 449, 453 (6th Cir. 2008) (citing GMC v. Lanard Toys, 468 F.3d 405, 412 (6th Cir. 2006)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." Slusher, 540 F.3d at 453 (citation omitted). A court must grant summary judgment "after adequate time for discovery and upon motion, against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. 2548; *see* In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (same). Finally, although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." Demyanovich v. Cadon Plating & Coatings, L.L.C., __F.3d __, __, No. 13-1015, 2014 WL 1259603, at *4 (6th Cir. Mar. 28, 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Generally, a party must support its assertions of fact "by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). However, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

## *III. ANALYSIS*

### A.  Timeliness of Amended Complaint

The Court will first consider Defendants' argument that the amended complaint was not timely filed. Unlike the remainder of Defendants' arguments, Plaintiffs did respond to the merits of this averment.

A federal civil rights action in Tennessee must be initiated within one-year from when the cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(3); Moore v. Tennessee, 267 F. App'x

450, 455 (6th Cir. 2008). The limitations period for these claims is borrowed from state law, but the accrual date is a question of federal law and is typically the day on which "the plaintiff knows or has reason to know of the injury which is the basis of his action." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007). Here, it is undisputed that Plaintiffs' civil rights claims accrued on August 27, 2012, when the law enforcement officers entered their home, and thus, the statute of limitations ran on August 27, 2013. Moore and Johnson's original complaint was timely filed on August 26, 2013, (D.E. 1) however, the amended complaint naming Defendants was not submitted until December 31, 2013—126 days beyond the applicable one-year statute of limitations (D.E. 9). *See* Tenn. Code Ann. § 28-3-104(a)(3). As a result, Defendants argue that Plaintiffs' federal claims should be dismissed because the amended complaint was untimely under Tenn. Code Ann. § 28-3-104 and failed to meet the requirements for relation back under Federal Rule of Civil Procedure 15(c). (D.E. 17-1 at 5–6.)

Moore and Johnson acknowledge that the claims against Defendants were filed outside the prescribed one-year limit, but insist that the complaint was nonetheless timely presented pursuant to the savings statute found in Tenn. Code Ann. § 20-1-119, (D.E. 23 at 2–3) which provides in pertinent part that:

> (a) [i]n civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging that person's fault, either:

> (1) Amend the complaint to add the person as a defendant . . . and cause process to be issued for that person; or
>
> (2) Institute a separate action against that person by filing a summons and complaint. . . .
>
> (b) A cause of action brought within ninety (90) days pursuant to subsection (a) shall not be barred by any statute of limitations. . . .

Tenn. Code Ann. § 20-1-119.

This provision was enacted in response to Tennessee's shift from a contributory negligence system to one of modified comparative fault. <u>Mann v. Alpha Tau Omega Fraternity</u>, 380 S.W.3d 42, 46 (Tenn. 2012); *see also* <u>McIntyre v. Balentine</u>, 833 S.W.2d 52, 56 (Tenn. 1992) (adopting a modified comparative fault system for tort claims). Its purpose is "to provide a plaintiff 'with a fair opportunity to bring before the trial court all persons who caused or contributed to the plaintiff's injuries.'" <u>Becker v. Ford Motor Co.</u>, __ S.W.3d __, __, No. M2013-02546-SC-R23-CV, 2014 WL 901510, at *4 (Tenn. Mar. 7, 2014) (quoting <u>Mann</u>, 380 S.W.3d at 50). The Tennessee Supreme Court has "stated repeatedly that Tenn. Code Ann. § 20-1-119 should not be construed narrowly because it is an integral part of a comparative fault system that is built on the concepts of fairness and efficiency." <u>Id.</u>

The 90-day period provided by this rule is not characterized "as a statute of limitations, but as a window, as a saving statute, as a tolling statute, as an extension, as a suspension, and as a grace period." <u>Mills v. Fulmarque, Inc.</u>, 360 S.W.3d 362, 369–70 (Tenn. 2012). The State Supreme Court has explained that

> [t]he statute allows a plaintiff to add a comparative tortfeasor as a defendant after the statute of limitations has expired when two conditions are met. The first condition is that the plaintiff must assert a claim against a potential tortfeasor within ninety days of the naming of that person by a defendant sued within the statute of limitations applicable to the plaintiff's claim. <u>Mills</u>, 360 S.W.3d at 370 (Tenn. 2012). The second condition is that the person named must not already be

> a party to the lawsuit. Townes[ v. Sunbeam Oster Co._, 50 S.W.3d 446, 453 (Tenn. Ct. App. 2001)].

Mann_, 380 S.W.3d at 47. The availability of this statute "does not depend on whether the non-party was either known or unknown to the plaintiff when its original complaint was filed." Becker, 2014 WL 901510, at *6; *see also* Townes, 50 S.W.3d at 453 ("[A] plaintiff's knowledge of the existence of other persons who might be liable for the plaintiff's injuries is irrelevant."). Nor does it depend on any technical form of identification in a defendant's answer. Rather, the answer must simply give "a plaintiff notice of the identity of a potential nonparty tortfeasor and allege[] facts that reasonably support a conclusion that the nonparty caused or contributed to the plaintiff's injury." Austin v. State, 222 S.W.3d 354, 358 (Tenn. 2007).

In the instant matter, Defendants acknowledge but do not address Plaintiffs' assertion that Tenn. Code Ann. § 20-1-119 applies and renders their amended complaint timely. (*See* D.E. 24 at 1.) Instead, they argue the complaint is barred by the one-year statute of limitations and cannot relate back to the time the original complaint was filed under Federal Rule of Civil Procedure 15(c). (D.E. 17-1 at 5–6; D.E. 24 at 1–3.) Defendants claim this procedural remedy is unavailable because Plaintiffs' amendment did not substitute defendants due to mistaken identity, but added them as parties while maintaining the original Henderson County defendants. Even if true, this argument is irrelevant. Plaintiffs do not rely, nor do they have any need to rely, on the relation-back provisions of Fed. R. Civ. P. 15(c), because the Tennessee savings statute clearly applies. *See* Wallace v. Kato, 549 U.S. 384, 394, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (citing Hardin v. Straub, 490 U.S. 536, 538–39, 109 S. Ct. 1998, 104 L. Ed. 2d 582 (1989); Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 484–86, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980)) ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations.") The statute applies because: (1) Moore and

Johnson filed suit against the Henderson County defendants within the applicable statute of limitations (D.E. 1); (2) those original defendants named the Scotts Hill Defendants, who were then non-parties, as comparative tortfeasors in their answer (D.E. 7); and (3) Plaintiffs filed an amended complaint naming the Scotts Hill parties as defendants well within 90 days from their identification in the answer (D.E. 9).

Defendants only once mention Tenn. Code Ann § 20-1-119 and do not cite or discuss any authority indicating that a party's qualification for relation back under Fed. R. Civ. P. 15(c) has any bearing on its ability to utilize this 90-day window explicitly provided by the Tennessee Legislature. (*See* D.E. 24 at 1.) On the contrary, federal courts in Tenessee have consistently considered the tolling statute's application without any discussion of interrelation with, or dependency on, Fed. R. Civ. P. 15(c). *See, e.g.*, Woodward v. City of Gallatin, __ F. Supp. 2d __, __, No. 3:10-1060, 2012 WL 3095363 (M.D. Tenn. July 30, 2012) (applying Tenn. Code Ann. § 20-1-119 without mentioning Fed. R. Civ. P. 15); Travelers Indem. Co. v. Indus. Paper & Packaging Corp., No. 3:02-CV-491, 2006 WL 2050686 (E.D. Tenn. July 19, 2006) (same); Kizziah v. Fire Mgmt. Sys., No. 1:04-CV-374, 2006 WL 218026 (E.D. Tenn. Jan. 27, 2006) (applying the two provisions independently). Thus, Plaintiffs' amended complaint was timely filed, and Defendants' motion for summary judgment on this issue is DENIED.

## B. Plaintiffs' Rule 56(d) Motion[2]

"The non-movant bears the obligation to inform the district court of its need for discovery" by filing "an affidavit pursuant to [Rule 56(d)] that details the discovery needed." Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 627 (6th Cir.

---

[2]    Prior to 2010, the provisions in rule 56(d) were found in Rule 56(f). This change in section number had "no substantive effect" and, therefore, cases applying the pre-2010 Rule 56(f) standard are equally applicable. Alspaugh v. McConnell, 643 F.3d 162, 167 n.1 (6th Cir. 2011) (citing CareToLive v. Food & Drug Admin., 631 F.3d 336, 344 (6th Cir. 2011)).

2002). Generally, the party must describe "what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000); *see also* Egerer v. Woodland Realty, Inc., 556 F.3d 415, 426 (6th Cir. 2009) (same).

Whether or not additional discovery should be allowed is soundly within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. Egerer, 556 F.3d at 426. In the typical case, where the movant is seeking *additional* discovery, the Sixth Circuit applies a five-factor test to determine if the district court abused its discretion. *See* CenTra, Inc. v. Estrin, 538 F.3d 402, 420 (6th Cir. 2008). However, where the parties have had *no* opportunity for discovery, an "oft-repeated" rule in this Circuit, Thomason v. Amalgamated Local No. 863, 438 F. App'x 358, 361 (6th Cir. 2011), "transcends" the usual five-factor approach, Alspaugh v. McConnell, 643 F.3d 162, 167 (6th Cir. 2011). This instruction provides that "[i]f the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion." Vance v. United States, 90 F.3d 1145, 1149 (6th Cir. 1996) ("Most significant to the conclusion we reach is the fact that *no* discovery was conducted before the motion for summary judgment was filed and decided."); *see, e.g.*, Ball v. Union Carbide Corp., 385 F.3d 713, 719 (6th Cir. 2004) ("It is well-established that the plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment.") (internal quotation marks omitted); White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231 (6th Cir. 1994) ("Yet we nevertheless conclude that summary judgment should not have been awarded until the plaintiffs were allowed some opportunity for discovery. . . . In

the instant case, we find that the grant of summary judgment, absent *any* opportunity for discovery, is such a misuse.").

While it is "generally an abuse of discretion to deny a Rule 56([d]) motion in the absence of *any* opportunity for discovery," there are "some limited exceptions." <u>CenTra</u>, 538 F.3d 420–21. The Sixth Circuit Court has affirmed denials prior to discovery when the supporting affidavits were too vague, <u>id.</u> at 420 (citing <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 359 (6th Cir. 1989)), and when "further discovery would not have changed the legal and factual deficiencies," <u>id.</u> (quoting <u>Maki v. Laakko</u>, 88 F.3d 361, 367 (6th Cir. 1996), *cert. denied*, 519 U.S. 1114, 117 S. Ct. 956, 136 L. Ed. 2d 842 (1997)). *See* <u>Alspaugh</u>, 643 F.3d at 167.

Defendants argue that Moore and Johnson are not entitled to discovery under Rule 56(d) because an "affidavit saying only that they cannot oppose summary judgment because they have not had the opportunity to engage in discovery" is inadequate. (D.E. 24 at 5.) Attorney for Plaintiffs' declaration states the following:

> 2. I filed an Amended Complaint on behalf of the Plaintiffs after the original defendants alleged the fault of a [sic] non-parties wherein they stated "Defendants[] affirmatively state that they acted on presumably reliable information provided to them by Scotts Hill Police Department officer Wes Woodward, and therefore these Defendants did not act intentionally, recklessly, or negligently."

> 3. Shortly after having filed the Amended Complaint wherein the above defendants were named, these defendants filed a motion for summary judgment, based largely upon a statute of limitations defense and a declaration of Wes Woodward wherein he states detailed facts about how and why he entered the Plaintiffs' residence. Although he admits he was without warrant, he claims the failure to have a warrant was excused by "exigent circumstances" and ma[n]y other facts surrounding his training.

> 4. I have not had any opportunity to conduct any discovery as to Scott's [sic] Hill and/or Wes Woodward, as the Initial Case Management Conference has not been set, no Initial Disclosures have been exchanged and no depositions have been taken. I cannot respond to the facts contained in this declaration adequately to

oppose the motion for summary judgment without the benefit of any discovery. The first time I became aware of Scott's [sic] Hill's involvement or Wes Woodward was when he was named by the original defendants in their Answers.

(D.E. 23-1.)

Defendants cite <u>Summers v. Leis</u>, 368 F.3d 881, 887 (6th Cir. 2004) (quoting <u>Simmons Oil Corp. v. Tesoro Petroleum Corp.</u>, 86 F.3d 1138, 1144 (Fed. Cir. 1996)), for its holding that a plaintiff "must state with 'some precision the materials he hopes to obtain with *further discovery*, and exactly how he expects those materials would help him in opposing summary judgment.'" <u>Id.</u> (emphasis added). Although they point out the vagueness rule, Defendants do not recognize this Circuit's admonition to lower courts that a denial of a Rule 56(d) motion where no discovery has been allowed is "generally an abuse of discretion." <u>CenTra</u>, 538 F.3d at 420–21. This holding by the Circuit is distinguishable where the request is for additional discovery. *See* <u>Back v. Hall</u>, No. 06-05-ART, 2012 WL 369425, at *6 (E.D. Ky. Feb. 3, 2012) (Cases granting summary judgment notwithstanding a Rule 56(d) affidavit seeking more discovery "are inapposite" to those in which no discovery has been conducted.).

The primary, if not the only, case cited by courts for its denial of a technically-sound Rule 56(d) motion based on vagueness grounds prior to the commencement of discovery is <u>Emmons v. McLaughlin</u>, 874 F.2d 351. The plaintiff in that case had made "sweeping allegations" against various law enforcement officials claiming that he had been "continually harassed" for over eight years. <u>Id.</u> at 354. The Sixth Circuit rejected the plaintiff's affidavit because he completely failed to describe how discovery would uncover facts of the purported harassment when the plaintiff himself, who would obviously have been present, failed to divulge any such information. The panel found that if the plaintiff "was the target of [the defendants] actions, we believe that such details would and should have been within his control." <u>Id.</u> at 357.

The situation here is clearly distinct. The facts and circumstances surrounding the actions taken and decisions made by Defendants up to and including their entry into Plaintiffs' home is information that is "essential to justify [Plaintiffs'] opposition" and wholly within Defendants' exclusive possession. Fed. R. Civ. P. 56(d).

In his declaration, counsel for Plaintiffs insists that Defendants' motion for summary judgment is largely based on the detailed facts contained in Woodward's affidavit—a party that Plaintiffs had only become aware of when he was named in the Madison County defendants' answer. (D.E. 23-1 at ¶3.) Moore and Johnson request discovery in order to oppose these detailed statements about the officers' conduct. (Id. at ¶4.) Although their request is not explicitly targeted at one or more specific items of discovery, such as a deposition of a certain witness or the production of a particular document, a wholesale denial of their motion and a corresponding grant of summary judgment based on the affidavit of a single officer would constitute an abuse of this Court's discretion. *See* Back, 2012 WL 369425, at *6 (E.D. Ky. Feb. 3, 2012) ("Ultimately, and regardless of the vagueness of the affidavit, not allowing [the plaintiff] the opportunity to develop discovery on her free speech claim would likely cause substantial prejudice."); *see also* White's Landing, 29 F.3d at 231 ("The benefits of [summary judgment] are quickly undermined if it is employed in a manner that offends concepts of fundamental fairness."). Under the particular circumstances of this case and at the early stage in the litigation, the declaration is not overly vague, and granting Plaintiffs' motion is within the bounds of this Court's discretion.

However, insofar as Plaintiffs request an order granting discovery for all of their claims regardless of whether they are impacted by the statements in Woodward's affidavit, the motion must be denied for two reasons. First, as will be discussed in the following sections, the court

should not delay its consideration of Defendants' motion to allow discovery on several of Plaintiffs' claims because doing so would not change the readily apparent "legal and factual deficiencies" they espouse. CenTra, 538 F.3d at 420 (quoting Maki, 88 F.3d at 367). Additionally, while Moore and Johnson have not explicitly delineated the scope of their discovery request, such can reasonably be inferred from the request to take discovery so they can "respond to the facts contained in [Woodward's affidavit]." (D.E. 23-1 at ¶4.) Thus, Defendants' motion should only be deferred or denied in favor of discovery for those arguments relying on the officer's statements.

C.  Wes Woodward's Qualified Immunity Defense

Defendants argue that the doctrine of qualified immunity bars Plaintiffs' individual claims against Woodward. (D.E. 17-1 at 10–13.) Plaintiffs only respond that discovery is needed. In reply, Defendants maintain that even if the Court were inclined to grant Plaintiffs' discovery request, it cannot delay addressing the threshold question of Woodward's qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (citation and internal quotation marks omitted). The purpose of the doctrine is "not only to protect officials from civil damages, but just as importantly, to protect them from the rigors of litigation itself, including the potential disruptiveness of discovery." Everson v. Leis, 556 F.3d 484, 491 (6th Cir. 2009) (citing Skousen v. Brighton High Sch., 305 F.3d 520, 526 (6th Cir. 2002)); see also Anderson v. Creighton, 483 U.S. 635, 646 n.6, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (A purpose of qualified immunity is "to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of

effective government.") (citation and quotation marks omitted). Because the "entitlement to qualified immunity involves immunity from suit rather than a mere defense to liability," Skousen, 305 F.3d at 526 (citing Siegert v. Gilley, 500 U.S. 226, 223, 111 S.Ct. 1789, 114 L. Ed. 2d 277 (1991)), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation," Pearson, 555 U.S. at 232, 129 S. Ct. 808 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)). Therefore, qualified immunity is a "threshold question" which a court must address if "properly raised prior to discovery." Summers, 368 F.3d at 886 (6th Cir. 2004) (citing Skousen, 305 F.3d 520); see also Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed.").

However, a competing interest comes into play when a plaintiff rebuts this defense with a proper motion relating a need for discovery. Though, as just described, an early resolution of the immunity issue is essential, so too is the notion that a "plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." Ball, 385 F.3d at 719 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 257, 106 S. Ct. 2505). Balancing these divergent principals when no discovery has been conducted presents a "somewhat . . . complicated" question. Anderson v. Creighton, 483 U.S. at 646 n.6, 107 S. Ct. 3034; see also Westerfield v. United States, 366 F. App'x 614, 621 ("the resolution of this question requires delicate balancing"). Courts addressing this question have acknowledged that despite the substantial protections qualified immunity affords public officials, it does not "create an immunity from all discovery." Crawford-El v. Britton, 523 U.S. 574, 593 n.14, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998). Thus, "limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." Id.

A roadmap for navigating this notion of "delicate balancing" was first announced in Anderson v. Creighton, 483 U.S. at 646 n.6, 107 S. Ct. 3034. There, the Supreme Court instructed that district courts should first determine whether the actions taken by the police officer, as alleged by the plaintiff, "are actions that a reasonable officer could have believed lawful. If they are, then [the officer] is entitled to dismissal prior to discovery." Id. The Court has since refined this initial inquiry into a two-prong test: a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, __ U.S. __, __, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (quoting Harlow, 457 U.S. at 818, 102 S. Ct. 2727); see also Skousen, 305 F.3d at 526–27 ("[U]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)). Courts were once required to address these prongs in sequential order, but now have discretion in deciding which to analyze first. See Pearson, 555 U.S. at 236, 129 S. Ct. 808 (overruling the sequence mandated in Saucier v. Katz, 553 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

If the complaint survives this initial inquiry, discovery may be necessary if the officer's version of events differ from those alleged in the plaintiff's complaint. Anderson, 483 U.S. at 646 n.6, 107 S. Ct. 3034; see also Crawford-El, 523 U.S. at 598, 118 S. Ct. 1584 ("If the plaintiff's action survives these initial hurdles and is otherwise viable, the plaintiff ordinarily will be entitled to some discovery."); Everson, 556 F.3d at 492–93 ("A district court can, of course, determine in its reasoned judgment that a decision on a motion for summary judgment [based on qualified immunity] cannot be made without further discovery.") In applying this last step, the

court should "assum[e] the truth of the plaintiff's allegations." <u>Crawford-El</u>, 523 U.S. at 598, 118 S. Ct. 1584. Any permitted discovery should "[o]f course . . . be tailored specifically to the question of [the officer's] qualified immunity." <u>Anderson</u>, 483 U.S. at 646 n.6, 107 S. Ct. 3034; *see also* <u>Crawford-El</u>, 523 U.S. at 598–99, 118 S. Ct. 1584 (Courts "should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible.")

Accordingly, the Court must initially determine if Plaintiffs' complaint alleges a violation of a clearly established constitutional right. *See* <u>al-Kidd</u>, __ U.S. __, 131 S. Ct. at 2080. Plaintiffs asserted the following facts. While Moore and Johnson were asleep in their home, law enforcement officers from the Henderson County Sheriff's Department and the Scotts Hill Police Department entered without permission or a warrant. (D.E. 9 at ¶¶8–12.) The officers had been dispatched to that address based on a "tip or rumor" that a man wanted for "theft of a pontoon boat and trailer" might be found there. (<u>Id.</u> at ¶10.) Once inside, the officers woke the Plaintiffs with their guns trained on them—placing them in fear for their lives. (<u>Id.</u> at ¶¶12, 14.) The officers then searched the home before concluding that no one else was present. (<u>Id.</u> at ¶¶15–16.) Based on these assertions, Plaintiffs make the following claims:

> Defendants' acts or omissions deprived Plaintiffs of the right[s] secured to them by the Constitution of the United States, including, but not limited to, their Fourth Amendment right to be free from unlawful search and seizure, the Equal Protection and Substantive Due Process Clauses of the Fourteenth Amendment, and the rights afforded them by the Fifth and Eight[h] Amendments to be free from unjustified excessive force and cruel and unusual punishment.

(D.E. 9 at ¶35.)

The Court will first address Plaintiffs' claim under the Fourth Amendment which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States District Court, 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972). It is therefore "a basic principle . . . that searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City, Utah v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) (internal quotation marks omitted) (quoting Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)). This presumption will prevail unless the officers' actions were nonetheless objectively reasonable under the circumstances. Kentucky v. King, __U.S.__, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011) (quoting Brigham, 547 U.S. at 403, 126 S. Ct. 1943) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness." ). An exception is generally found where "the exigencies of the situation make the need of law enforcement so compelling that the warrantless search is objectively reasonable." Michigan v. Fisher, 558 U.S. 45, 47, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009) (citation omitted). At least four exigencies have been categorically identified by courts as ones that will overcome a warrantless search as a matter of law: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, or (4) a risk of danger to the police or others." United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005); *see also* Brigham, 547 U.S. at 403, 126 S. Ct. 1943 (recognizing some of these exigencies).

Defendants first argue that the Court cannot reasonably infer that the officers were searching for a boat thief because Plaintiffs' allegations in that regard are based "upon information and belief." (D.E. 17-1 at 11.) Though this issue has yet to be explicitly addressed by the Sixth Circuit, the district courts have consistently held that allegations based on information and belief are still permissible post-Twombly and Iqbal "where the facts are peculiarly within the

possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." Cassidy v. Teaching Co., No. 2:13-cv-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (quoting Arista Records, L.L.C. v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)) (gathering numerous opinions from district courts in this circuit applying the holding in Arista); *see also* Charles A. Wright and Arthur R. Miller, 5 Federal Practice and Procedure: Civil § 1224 (3d ed. 2013) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the Twombly and Iqbal decisions."). Defendants' recognize this standard and assert that Plaintiffs' boat thief inference based on the newspaper article attached to the complaint is not reasonable. (D.E. 17-1 at 11) They additionally aver that Plaintiffs' allegation is insufficient because Moore and Johnson do not claim the information is solely within Woodward's control and possession. (Id.)

Plaintiffs' contention regarding the reason for the officers' presence is based on what Plaintiffs' were told by officers that night along with an inferential connection to a September 5, 2012 news story appearing in the *Lexington Progress*. (D.E. 9 at ¶ 11, ex. 1, ex. 2.) In a letter sent to the Henderson County Sheriff's Office by Moore and Johnson, and attached to the complaint, Plaintiffs' state that the officers said they were looking for a man named "Billy." (Id. at ex. 2.) The article published a few days after the incident relates that the Sheriff's Department was searching for "Billy Lloyd Tucker, of Rogers Road, Scotts Hill" for "theft of a pontoon boat and trailer." (Id. at ex. 1.) These documents support Plaintiffs' factual allegation and adequately permit the Court to draw a reasonable inference that the officers were in search for this boat thief.

Furthermore, it is obvious that the true motive for the officers' entry and search was, and continues to be, wholly within Defendants' possession. The letters attached to the complaint and sent to the Henderson County Sheriff's Department by the Plaintiffs and their attorney reveal clear attempts to elicit basic information regarding the incident in question. (D.E. 9 at ex. 2, ex. 3.) No responses to these letters were received. (D.E. 9 at ¶23.) For this additional reason, Plaintiffs averment is not deficient simply because it was made on information and belief.

Here, it is clear that Plaintiffs have adequately pled a violation of their Fourth Amendment rights. They enjoyed an unqualified expectation of privacy while in their own home. As alleged, there were no exigent circumstances to otherwise render lawful the officers' warrantless entry and search of Plaintiffs' home. If proven true, there can be little doubt that the officers' actions violated Moore and Johnson's Fourth Amendment rights.

It is equally evident that Plaintiffs' right to be free from a warrantless search under these circumstances was "clearly established" at the time. Harlow, 457 U.S. at 818, 102 S. Ct. 2727. "This inquiry turns on the 'objective reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson, 555 U.S. at 244, 129 S. Ct. 808 (quoting Wilson v. Layne, 526 U.S. 603, 614, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)); see also al-Kidd, __U.S. at __, 131 S. Ct. at 2085 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."); Reichle v. Howards, __U.S.__, __, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (This standard "protects the balance between the vindication of constitutional rights and government officials' effective performance of their duties."). In order to be clearly established

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in

question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 640, 107 S. Ct. 3034; *see* Hagans v. Franklin Cnty. Sheriff's Office, 695 F.3d 505, 508 (6th Cir. 2012) (same).

Even though a person's Fourth Amendment right to warrantless intrusion by law enforcement is clearly established, a more precise inquiry is mandated. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established . . . ." Wilson, 526 U.S. at 615, 119 S. Ct. 1692; *see also* al-Kidd, __U.S.__, 131 S. Ct. at 2083 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") A "case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, __ U.S. at __, 131 S. Ct. at 2083. Here, when "[d]efined at the appropriate level of generality," Hagans, 695 F.3d at 509, that question is whether a reasonable officer could have believed that, based on a tip, entering a home without a warrant to search for thief was lawful.

Taking Plaintiffs' allegations as true, there is no doubt that the answer to this question is no—no reasonable officer would have believed he could lawfully enter Plaintiffs' home under these circumstances. As the Sixth Circuit Court recently stated, "under clearly established law, the line has been drawn at the door to a person's residence, and an officer may enter only with a warrant, consent, or qualifying exception to the warrant requirement under exigent circumstances." Andrews v. Hickman Cnty., Tenn., 700 F.3d 845, 857 (6th Cir. 2012); *see* Steagald v. United States, 451 U.S. 204, 211–212, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981) ("Except in such special situations, we have consistently held that the entry into a home to

conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant."). The government bears the "heavy burden" of ultimately proving an exigency. McClain, 444 F.3d at 562 (quoting Welsh v. Wisconsin, 466 U.S. 740, 751, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984)). Plaintiffs clearly did not consent to the search, and the presence of a thief as indicated by a tip is distinguishable from any validating exigent circumstance. *See, e.g.*, Minnesota v. Olson, 495 U.S. 91, 101, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990) (No exigent circumstance for entering home even though police knew that suspect sought for a "grave crime" was inside.); Welsh, 466 U.S. at 753, 104 S. Ct. 2091 ("application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed"); Steagald, 451 U.S. at 221– 22, 101 S. Ct. 1642 (Even armed with an arrest warrant for an individual, a search of a third person's home where the individual is found is unreasonable.) Thus, in focusing narrowly on the Plaintiffs' allegations as instructed by Anderson, 483 U.S. at 646 n.6, 107 S. Ct. 3034, the Court finds that, if proven true, they demonstrate that Moore and Johnson's clearly established Fourth Amendment rights were violated by Defendants.

With an affirmative answer to the initial two-prong inquiry, the Court must now consider Defendants' version of events and determine if they differ from those alleged by Plaintiffs. *See* id. If so, by virtue of the Rule 56(d) motion and declaration, Plaintiffs may be granted limited discovery on the issue of qualified immunity. The Court finds that Defendants' description of the facts and circumstances surrounding the night in question, based on Wes Woodward's affidavit, are crucially distinct from Plaintiffs' in a number of ways. Most importantly, Defendants assert that Woodward and the other officers were not at the house searching for a pontoon boat thief, but instead looking for a man who was thought to have recently committed an assault and who

was known to suffer from schizophrenia. (D.E. 17-2 at ¶¶ 5–6, 10.) They state that the officers entered only after Sergeant Stanford knocked on the door, it opened, and he heard a noise within. (D.E. 17-2 at ¶13.) Woodward explains that he would never have entered a home without a warrant looking for a suspect, and that he entered that night out of "concern for the safety of the persons who might be in the house." (D.E. 17-2 at ¶¶17, 22). Thus, Defendants' factual recitations clearly differ from those in Plaintiffs' amended complaint, and limited discovery is necessary. This discovery must be narrowly tailored to the specific issue of Woodward's qualified immunity, Anderson, 483 U.S. at 646 n.6, 107 S. Ct. 3034, and that issue must be resolved before further discovery is allowed, Harlow, 457 U.S. at 818, 102 S. Ct. 2727.

Plaintiffs also allege the officers violated their rights under the Fifth, Eighth, and Fourteenth Amendments to the Constitution. (D.E. 9 at ¶35.) As will be discussed further below, these claims are meritless as against all Defendants. Therefore, the Court will not address them in regard to Woodward's qualified immunity defense.

D.  Plaintiffs' Claims Based on the Fifth, Eighth, and Fourteenth Amendments

Discovery for Plaintiffs' claims under these three Amendments is not warranted because it would not cure the deficiencies in Plaintiffs' complaint. CenTra, 538 F.3d at 420. The Fifth Amendment "applies to the federal government, not state or local governments," and Plaintiffs do not contend that Defendants are agents of the federal government. Myers v. Village of Alger, Ohio, 102 F. App'x 931, 933 (6th Cir. 2004). The Eighth Amendment's ban on cruel and unusual punishment applies only after there has been a conviction, and Plaintiffs do not claim they were convicted of any crime. Ingraham v. Wright, 430 U.S. 651, 671, n.40, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); *see also*

Graham v. Connor, 490 U.S. 386, 395, n.10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (same).

Finally, Moore and Johnson mention nothing approaching discrimination in violation of the

Fourteenth Amendment's Equal Protection clause, *see* Center for Bio-Ethical Reform, Inc. v.

Napolitano, 648 F.3d 365, 379 (6th Cir. 2011), and the Substantive Due Process Clause is

inapplicable because the Fourth Amendment is the proper avenue for redressing Plaintiffs'

assertions, *see* Graham, 490 U.S. at 395, 109 S. Ct. 1865. Therefore, Defendants' motion for

summary judgment on these issues is GRANTED.

E.  Claims Against Scotts Hill Police Department

Defendants argue that any claims against the Scotts Hill Police Department should be

dismissed because it is not a legal entity capable of being sued. Tennessee federal courts have

routinely held that police departments cannot be sued. *See* McKinney v. McNairy Cnty., Tenn.,

No. 1:12-CV-01101-JDB, 2012 WL 4863052, at *3 (W.D. Tenn. Oct. 11, 2012); Mathes v.

Metro. Gov't of Nashville & Davidson Cnty., No. 3:10–cv–0496, 2010 WL 3341889, at *2

(M.D. Tenn. Aug. 25, 2010); CP v. Alcoa Police Dep't, No. 3:10–CV–197, 2010 WL 2698290,

at *2 (E.D. Tenn. July 6, 2010). The Court agrees that the City of Scotts Hill, and not the Police

Department, is "the proper party to address the allegations of [the] complaint." Matthew v. Jones,

35 F.3d 1046, 1049 (6th Cir. 1994). Therefore, Defendants' motion for summary judgment on all

claims against the Scotts Hill Police Department is GRANTED.

*IV.  CONCLUSION*

For the foregoing reasons, the Court GRANTS Defendants' motion for summary

judgment on Plaintiffs' Fifth, Eighth, and Fourteenth Amendment claims, and those against the

Scotts Hill Police Department. It also GRANTS IN PART Plaintiffs' Rule 56(d) motion to take

discovery. Defendants' request for summary judgment based on Wes Woodward's qualified immunity defense is held in abeyance pending limited discovery. To facilitate expeditious and minimally disruptive discovery on that issue, this matter is REFERRED to the Magistrate Judge for a scheduling conference establishing a discovery plan in accordance with this order. The discovery period is to be limited to no more than ninety days. Any discovery should be "narrowly tailored" to solely addressing qualified immunity and should consist of only those depositions, interrogatories, and requests for production necessary for the parties to adequately explore that issue. *See* Anderson, 483 U.S. at 646 n.6. Defendants' will be permitted to supplement, if necessary, their motion for summary judgment as to qualified immunity, within fourteen days following the close of this period. Plaintiffs' shall have an additional fourteen days thereafter in which to file any response.

Defendants' motion for summary judgment as to all remaining issues is DENIED WITHOUT PREJUDICE. Discovery on these issues is stayed pending a determination of qualified immunity and shall commence subsequent to the Courts ruling on that threshold issue. At the close of discovery, Defendants' will be permitted to file a new motion for summary judgment renewing any arguments raised in their instant motion.

IT IS SO ORDERED this 30th day of April, 2014.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE